[No. D054087. Fourth Dist., Div. One. July 28, 2009.]

SAM H. FARAHANI, Plaintiff and Respondent, v.
SAN DIEGO COMMUNITY COLLEGE DISTRICT et al., Defendants and
Appellants.

1488

## COUNSEL

Stutz Artiano Shinoff & Holtz, Ray J. Artiano and Richard E. Romero for Defendants and Appellants.

Grady and Associates, Dennis M. Grady, Kenneth W. Baisch and Bradley K. Moores for Plaintiff and Respondent.

## OPINION

**McINTYRE, J.**—In this case we hold that Education Code section 87485 (undesignated statutory references are to the Education Code) renders "null and void" the "last chance agreement" (Agreement) under which community college faculty member Sam H. Farahani waived his statutory due process rights relating to faculty discipline. The San Diego Community College District (District) terminated Farahani after he allegedly violated his Agreement with the District. The trial court granted Farahani's petition for writ of mandate (Code Civ. Proc., § 1085), ruling that the Agreement violated the Education Code and Farahani's due process rights. The court issued a peremptory writ of mandate under Code of Civil Procedure section 1085 directing the District to (1) reinstate Farahani with full backpay, interest and benefits and (2) require its governing board to determine whether Farahani should be terminated, "all in compliance with the requirements of the Education Code, including appropriate notice and opportunity to be heard." The District appeals.

In addition to concluding that Farahani's purported waiver of the right to a hearing in the Agreement and attached general and special release and settlement agreement (Release) were unenforceable under section 87485, we also reject the District's claim that Farahani's petition was barred by laches, unclean hands, and the failure to exhaust administrative remedies. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Farahani was a tenured professor of international relations and public policy at Mesa College. He had worked for the District for 18 years prior to his termination in June 2006.

Beginning in 1994, the District received complaints from female students and staff about what they described as unwanted sexual and social advances. In October 2000, after investigating some of these complaints, the District gave Farahani a written reprimand advising him that continued misconduct would result in discipline up to and including termination.

On September 20, 2004, the District sent Farahani written "Notice of Pre-Disciplinary Hearing: Suspension." The notice cited the basis for the recommended one-year suspension without pay as "a continuing pattern of inappropriate behavior toward students and employees over several years." The notice informed Farahani that he had "the right to respond to the proposed discipline either orally or in writing or both."

The matter did not proceed to the hearing stage. In November 2004, the attorney for the American Federation of Teachers Guild, California Federation of Teachers Local 1931 (Union) presented Farahani with the Agreement, and told him that the District would suspend him for a year without pay unless he signed it. Among other things, the Agreement and Release provided that Farahani (1) accept a reduction of pay equivalent to one month's salary and (2) for a period of 18 months agree to refrain from conduct that constituted sexual harassment, "including any verbal, physical or visual conduct" on campus, and from "personal contacts and/or communications" with students off campus. The Agreement stated that if Farahani failed to comply with its provisions, he could be "terminated at the Chancellor's discretion, without the issuance of charges under the Education Code or District policies and without right of appeal . . . ." The Release included the following provision: "Farahani waives any and all appeal rights he may otherwise have to challenge the discipline or otherwise pursue any appeal relating to the pre-disciplinary notice."

District faculty members are covered by the collective bargaining agreement between the District's trustees and the Union. Article XIV, section 14.2 of the collective bargaining agreement provides that "All faculty are eligible for a hearing prior to any disciplinary action involving loss of pay." When encouraging Farahani to sign the Agreement, the Union attorney told Farahani that although the Agreement was "probably . . . not legal," it would be best to "[g]ive your 18 months and get it over with." Although Farahani believed that the charges were baseless, he stated he was "compelled" to sign "by two bad options."

While the Agreement was in effect, the District received new complaints about Farahani from female employees. Constance M. Carroll, the chancellor, concluded that Farahani's conduct towards these women "constituted unwanted social advances which could create an uncomfortable work environment and/or conduct which could be considered sexual harassment." She terminated Farahani effective June 9, 2006, pursuant to the Agreement. The termination letter stated, "Since you are being terminated from employment because of a violation of the [Agreement], you do not have a right of appeal."

Farahani wrote members of the District's governing board, requesting reinstatement and an opportunity to meet. He received no response. Farahani's attorney wrote Carroll on July 14, 2006, demanding Farahani's reinstatement plus backpay and benefits. The District's response reiterated that "Mr. Farahani was not entitled to the issuance of formal charges or right to appeal his termination under the provisions of the [Agreement]."

Farahani filed his petition for writ of mandate on March 7, 2007.

## DISCUSSION

### I. *Standard of Review*

Under Code of Civil Procedure section 1085, subdivision (a), the trial court may issue a writ of mandate "to any . . . board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such . . . board, or person." In reviewing a judgment granting a peremptory writ of traditional mandate under this section, we apply the substantial evidence test to the court's factual findings, but independently review its findings on legal issues. (*Stryker v. Antelope Valley Community College Dist.* (2002) 100 Cal.App.4th 324, 329 [122 Cal.Rptr.2d 489] (*Stryker*).) The interpretation of a statute is a legal issue subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### II. *The Agreement*

The District argues that the Agreement and Release included all the elements of a valid contract, Farahani signed them voluntarily on advice of counsel, and neither document was unlawful or against public policy. We begin with the dispositive question whether the Agreement and Release were invalid and unenforceable, as found by the trial court.

The Education Code sets forth due process rights granted to community college faculty members in disciplinary matters, including the right to notice, opportunity to object, a hearing before an arbitrator or administrative law judge, and a decision by the governing board. (§§ 87669, 87672–87674, 87678–87680.) The first paragraph of section 87485 expressly provides: "Except as provided in Section 87744, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void." The District contends that section 87485 is inapplicable to the Agreement and Release signed by Farahani, which it describes as a waiver in response to discipline. We conclude that the District interprets section 87485 too narrowly and there was no error in the trial court's ruling.

The rules of statutory construction are well established. Their aim is to ascertain legislative intent in order to effectuate the purpose of the law. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Courts generally adopt a literal interpretation of the words of a statute unless the words are ambiguous or the language is inconsistent with the statute's purpose. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent." (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 [80 Cal.Rptr.2d 803, 968 P.2d 514].) Moreover, courts should not read the statutory language in isolation, "but rather in context, keeping in mind the nature and obvious purpose of the statute." (*Covino v. Governing Board* (1977) 76 Cal.App.3d 314, 318 [142 Cal.Rptr. 812] (*Covino*).) "A corollary to this rule is that the various parts of the statutory enactment must be harmonized by considering the particular phrase, clause or section in the context of the statutory framework as a whole [citations]." (*Ibid.*) We apply these rules to determine the scope of section 87485.

Title 3, division 7, part 51, chapter 3 of the Education Code governs the employment rights of community college faculty. (*Stryker, supra*, 100 Cal.App.4th at p. 329; § 87400 et seq.) It is significant that section 87485 appears under article 1, "General Provisions." By its terms, section 87485 renders null and void *any* agreement to waive the benefits of chapter 3, "Employment." (§ 87485.) The only exception is an agreement pertaining to reductions in force under section 87744, which appears in the more specific article 6.5, "Reduction in Services." Courts have applied section 87485 and its predecessor, former section 13338.1, to bar waiver of statutory classification and tenure rights. (See *Stryker, supra*, 100 Cal.App.4th 324; *Kalina v. San Mateo Community College Dist.* (1982) 132 Cal.App.3d 48 [183 Cal.Rptr. 12]; *Covino, supra*, 76 Cal.App.3d 314.) The common denominator in these

cases, and the case before us, is the faculty member's waiver of a statutory right set forth in chapter 3 of the Education Code. We therefore reject the District's attempt to distinguish *Stryker* on grounds it did not involve discipline.

Citing *Campbell v. Graham-Armstrong* (1973) 9 Cal.3d 482, 486–487 [107 Cal.Rptr. 777, 509 P.2d 689] (*Campbell*), the District maintains that the purpose of section 87485 (former § 13338.1) is "to ensure that part-time employment is not outlawed . . . ." It argues that the Legislature took action to enact former section 13338.1 following an earlier Supreme Court decision, because of its concern that school or community college districts "would circumvent the classification system and deprive public employees of the salary that accompanies a proper classification." The District misreads *Campbell.* The court's reference to part-time employment was directed to the second paragraph of former section 13338.1, repeated in substance in the second paragraph of section 87485: "Notwithstanding provisions of this or any other section of this code, governing boards of community college districts may employ persons in academic positions on less than a full-time basis." (See *Campbell, supra,* 9 Cal.3d at p. 487.) Nothing in *Campbell* defines or limits the purpose of the first paragraph of former section 13338.1 in the manner the District suggests.

■ Next, the District cites Civil Code section 3513 and suggests that Farahani could lawfully waive the statutory due process protections because they were solely for his private benefit. In *Covino, supra,* 76 Cal.App.3d at page 322, the court expressly rejected the same argument and articulated the relevant public policy concerns: "[W]hile as a general rule anyone may waive the advantage of law intended solely for his benefit, a law established for a public reason cannot be waived or circumvented by a private act or agreement (Civ. Code, § 3513 . . .). Teachers are public employees and their tenure rights elaborately regulated by the Education Code reflect the public policy of the state. . . . 'Legislation which is enacted with the object of promoting the welfare of large classes of workers whose personal services constitute their means of livelihood and which is calculated to confer direct or indirect benefits upon the people as a whole must be presumed to have been enacted for a public reason and as an expression of public policy in the field to which the legislation relates.' " (Citations omitted.) The statutory due process rights afforded community college faculty reflect the same public policy, which, in our view, outweighs the competing policies cited by the District. Here, the Agreement and Release required Farahani to waive the benefit of those statutory rights in connection with the 2004 complaints *as well as in the future,* rendering it impossible for Farahani to challenge the substance of the new complaints against him. Civil Code section 3513 does not render lawful Farahani's waiver of due process rights.

In concluding that the Agreement and Release were "null and void" under section 87485, we reject two additional points raised in opposition to Farahani's petition. First, the District argues that the unfairness of the relief sought by Farahani is "strikingly similar" to the unfairness discussed in *Leithliter v. Board of Trustees* (1970) 12 Cal.App.3d 1095 [91 Cal.Rptr. 215]. That case is readily distinguishable. The petitioners in *Leithliter* did not claim they were terminated without due process. Because they had voluntarily resigned from their teaching positions, the court did not apply former section 13338.1 and dismissed the appeals as moot. (*Leithliter, supra,* at pp. 1097, 1099–1100, 1101.) Second, the District argues without citation to authority that even if the Agreement was void as against public policy, Farahani's petition was barred by the covenant not to sue contained in the Release. The District fails to explain how the waivers contained in the Release were outside the scope of section 87485.

### III. *Defenses to Farahani's Petition*

The court rejected the District's three affirmative defenses to Farahani's petition. We address each in turn.

### A. *Laches*

 " 'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Prejudice is not presumed from the simple fact of delay; it must be affirmatively shown. (*Piscioneri v. City of Ontario* (2002) 95 Cal.App.4th 1037, 1049 [116 Cal.Rptr.2d 38].) In determining whether a defendant has sustained its burden of proving laches, the court may consider the extent to which the defendant is partially responsible for the delay. (*Ibid.*) "Laches is an equitable defense, the existence of which is a matter commended to the discretion of the trial court, 'and in the absence of manifest injustice or lack of substantial support in the evidence, the trial court's determination will be sustained. [Citation.]' " (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 643 [267 Cal.Rptr. 350].)

The District contends that Farahani's petition is barred by laches because he filed it nine months after his termination and the District was prejudiced by the delay. The court rejected the District's arguments and found that the delay was not unreasonable. It noted that Farahani advised the District one month after his termination that he was challenging the summary action that denied him the right to a hearing. Citing Carroll's declaration, the court also found that the District failed to demonstrate prejudice. The court

stated that "any prejudice incurred by [the District] was of [its] choosing inasmuch as Petitioner's position was not filled until months after this writ petition was filed."

On appeal, the District argues for the first time that the delay giving rise to the defense of laches includes Farahani's failure to challenge the Agreement at the time he signed it, in addition to his delay in filing the petition. The District maintains that the unreasonable delay prejudiced the District in three ways. First, Farahani has been replaced and it "cannot simply terminate the replacement employee at-will." Second, if Farahani is awarded backpay, "the District will essentially be paying twice for the same position due [to] Mr. Farahani's conduct . . . ." Third, if the District is required to conduct a hearing regarding its intent to suspend Farahani for one year without pay, it "would have great difficulty tracking down [those] witnesses." The District also argues that the court's findings "create[] an inefficient and impractical policy that would require a public entity . . . to stop its hiring process . . . any time a terminated employee challenges their dismissal."

█ The record supports the court's factual findings on the questions of unreasonableness and prejudice. The question whether Farahani's failure to challenge the Agreement itself constitutes laches is not properly before us. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844 [30 Cal.Rptr.2d 697] [an appellate court will consider only issues raised below].) We agree with the trial court that the prejudice claimed by the District was the result of the District's own illegal actions terminating Farahani without a hearing and expressly informing him that he had no right to an appeal. The Education Code provides safeguards for both the District and the faculty in the hiring and firing process. (See § 87400 et seq.) In our view, compliance with statutory due process guarantees is consistent with public policy. (See *Covino, supra,* 76 Cal.App.3d at p. 322.) For these reasons we conclude that the court did not abuse its discretion in rejecting the District's laches defense.

B. *Unclean Hands*

█ The doctrine of unclean hands rests on the maxim that " 'he who comes into equity must come with clean hands.' [Citation.]" (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638 [41 Cal.Rptr.2d 329].) " ' "It . . . closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." ' [Citation.]" (*Ibid.*) The decision whether to apply the unclean hands defense is a matter within the trial court's discretion. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447 [99 Cal.Rptr.2d 678].) In exercising this

discretion, the court "must consider the material facts affecting the equities between the parties . . . ." (*Ibid.*)

The District argues that because Farahani was advised by the Union attorney that the Agreement was unenforceable, he signed it with no intention of performing. The District therefore contends that "it is inherently inequitable to allow Mr. Farahani to be reinstated and to receive backpay on the basis that he was terminated without a hearing, given that the sole reason he was not provided a hearing is because he agreed to waive such rights and the District believed him." The trial court found that the doctrine of unclean hands was inapplicable to the facts of this case.

We conclude there was no abuse of discretion. The difficulty with the District's argument is that the Agreement itself was contrary to the express language of section 87485 and unenforceable as a matter of law. *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833 [77 Cal.Rptr.2d 12] and *Camp v. Jeffer, Mangels, Butler & Marmaro, supra*, 35 Cal.App.4th 620, the cases cited by the District in support of applying unclean hands in the employment context, are distinguishable. The District presented Farahani with a Hobson's choice between two "bad," indeed illegal, options. Contrary to the District's argument, there is nothing in the record to suggest that Farahani signed the Agreement with the intent of not performing. The record supports a conclusion that Farahani followed the Union attorney's advice to take the pragmatic course and sign the Agreement.

## C. *Exhaustion of Remedies*

Under the exhaustion of remedies doctrine, " 'where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' " (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148 [43 Cal.Rptr.2d 693, 899 P.2d 79].) The same rule applies to a party to a collective bargaining agreement that provides grievance and arbitration machinery for the settlement of disputes. (*Cone v. Union Oil Co.* (1954) 129 Cal.App.2d 558, 563–564 [277 P.2d 464].) Failure to exhaust administrative remedies is a procedural prerequisite to judicial action. (*Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 219–222 [239 Cal.Rptr. 470]; but see *Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307, 311 [283 Cal.Rptr. 447] [exhaustion of administrative remedies jurisdictional].)

The trial court rejected the District's claim that Farahani failed to exhaust administrative remedies, stating that the District was "precluded from arguing this defense when by [their] own conduct they advised Petitioner he had no

rights of appeal." The District contends that the court's erroneous ruling "appears to stem from confusion between the appeal procedure provided by statute and the grievance procedure provided by the collective bargaining agreement Farahani was subject to." It suggests that the word "appeal" in the chancellor's termination letter referred only to the statutory hearing and appeal rights which were "separate and distinct from the grievance procedures set out in the collective bargaining agreement."

There is no merit in the District's contention. The same exception applies to either type of "appeal." Plaintiff need not exhaust administrative remedies provided by statute if the agency has already rejected the claim, announced its position on the claim or made clear it would not consider the plaintiff's evidence. (*Doster v. County of San Diego* (1988) 203 Cal.App.3d 257, 260–261 [251 Cal.Rptr. 507]; *Huntington Beach Police Officers' Assn. v. City of Huntington Beach* (1976) 58 Cal.App.3d 492, 498–499 [129 Cal.Rptr. 893].) An employee need not exhaust collective bargaining grievance procedures if the employer repudiates those procedures. (*Sidhu v. Flecto Co., Inc.* (9th Cir. 2002) 279 F.3d 896, 898.) Where that occurs, the employer is " 'estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action.' [Citation.]" (*Ibid.*)

Here, the record supports the trial court finding that the District was estopped by its own conduct from relying on the exhaustion doctrine. The chancellor's termination letter and the District's subsequent response to the July 14, 2006, letter from Farahani's attorney demonstrate that the District's denial of "appeal rights" was unequivocal and encompassed all avenues of appeal. The trial court could reasonably assume that the chancellor was aware of the two means of challenging the termination. Moreover, the Union president's approval of the Agreement supports a conclusion that the participants were aware of the collective bargaining rights Farahani was signing away. Indeed, the District's trial brief refers to the grievance procedure under the collective bargaining agreement as an "appeal of discipline." We conclude that the court was correct in finding that the exhaustion of remedies doctrine did not apply.

IV. *The Backpay Award*

Farahani states in his brief on appeal that because the trial court was correct on the merits of his petition, it was also correct in awarding him reinstatement with backpay and benefits. The District's reply brief appears to challenge the merits of the backpay award for the first time. That issue is not properly before us. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [60 Cal.Rptr.2d 770].)

## DISPOSITION

The judgment is affirmed. Farahani is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Benke, Acting P. J., and Huffman, J., concurred.