Filed 11/26/14  Fowler v. Cedars-Sinai Med. Center CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ASIA FOWLER, | B254874 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC480490) |
| v. | |
| CEDARS-SINAI MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ronald M. Sohigian, Judge.  Affirmed.

Louis P. Dell for Plaintiff and Appellant.

Davis Wright Tremaine, Emilio G. Gonzalez and Elizabeth J. Carroll for Defendant and Respondent.

Plaintiff and appellant Asia Fowler (Fowler) appeals from the judgment entered in favor of defendant and respondent Cedars-Sinai Medical Center (Cedars) after the trial court granted Cedars's motion for summary judgment in this action for violation of Labor Code section 432.7 (section 432.7), violation of the Investigative Consumer Reporting Agencies Act (Civ. Code, § 1786 et seq.) (ICRA), and intentional infliction of emotional distress. We affirm the judgment.

## BACKGROUND

**Factual background**

Fowler is and has been employed by Cedars as a housekeeper since December 2001. As a housekeeper, Fowler is responsible for cleaning patient rooms and disposing of trash in many areas of Cedars's medical center, including the pharmacy, offices, and restrooms. All of those locations could contain private patient information such as prescriptions, receipts, invoices, and medical bills.

On or about October 16, 2009, Fowler was arrested and detained by the federal government for conspiring to commit felony health care fraud in the case of *United States v. Iruke et al.*, case No. CR-09-01008-TJH. When Fowler was released, she verbally informed Cedars of her arrest. On October 29, 2009, Cedars placed Fowler on a paid administrative leave of absence.

On November 3, 2009, while awaiting trial, Fowler met with Cedars's employee relations manager Diane Erickson, human resources consultant Raul Navarro (Navarro), and union steward Lynn Bussey to discuss the criminal charges against her. At that meeting, Fowler confirmed that she had been arrested for medical insurance fraud. She denied committing Medicare fraud and said she may have been a victim of identity theft.

On November 5, 2009, Cedars placed Fowler on an unpaid leave of absence. The decision to place Fowler on unpaid leave was based on the conclusion that because the charges against Fowler involved medical insurance fraud in billing Medicare for medical equipment, Fowler should not have access to Cedars's premises as an employee until she was exonerated or provided exculpatory information. Navarro communicated Cedars's

2

decision to Fowler by phone on November 5, 2009, and by letter dated November 13, 2009.

In reaching its decision to place Fowler on unpaid leave, Cedars reviewed a Los Angeles Times article dated October 22, 2009, and a press release issued by the U.S. Department of Justice (DOJ) dated October 21, 2009. The DOJ press release reported that 20 defendants, including Fowler, had been arrested and indicted for allegedly participating in Medicare fraud schemes resulting in more than $26 million in fraudulent bills. The press release identified Fowler as one of the alleged owners of three medical supply companies using fraudulent prescriptions and documents to submit false claims to Medicare. The Los Angeles Times article did not name Fowler or any of the other defendants but described the defendants by their respective ages, gender, and places of residence, as well as the charges filed against them.

In January 2010, in response to an internal grievance filed by Fowler, Cedars's labor relations personnel met with Fowler and reiterated Cedars's decision to place her on unpaid leave until she was exonerated or exculpatory information was provided. During this meeting, Fowler was given an opportunity to read two news articles documenting her arrest and indictment.

After Fowler was placed on unpaid leave, she made a claim for unemployment benefits. Cedars protested the claim for unemployment benefits on the ground that she was not unemployed but on a leave of absence. In July 2010, the Employment Development Department denied Fowler's application for unemployment benefits.

After Fowler was indicted, Caryl Winter (Winter), a senior human resources compliance specialist at Cedars, attended some of the pretrial proceedings and the first two days of the jury trial in the criminal case against Fowler. None of the hearings attended by Winter concerned Fowler's arrest or indictment.

On August 30, 2011, the United States District Court granted Fowler a judgment of acquittal. Shortly thereafter, Fowler informed Cedars that the charges against her had been dismissed. Cedars made an offer to have Fowler return to work following her acquittal. Fowler did so and is currently employed by Cedars.

3

**Procedural background**

Fowler commenced the instant action on March 9, 2012. In the operative third amended complaint, she alleges causes of action for intentional and negligent violation of section 432.7, violation of ICRA, and intentional infliction of emotional distress. Cedars filed a motion for summary judgment, or alternatively, summary adjudication of issues, as to each of the causes of action asserted in the third amended complaint. The trial court granted Cedars's motion in its entirety.[1] Judgment was subsequently entered in Cedars's favor, and this appeal followed.

## DISCUSSION

**I. Standard of review**

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact

---

[1]     This case has a rather involved procedural history not relevant to this appeal but set forth here for informational purposes. After commencing this action, Fowler filed a first amended complaint alleging, among other claims, a cause of action for breach of the implied covenant of good faith and fair dealing. Cedars removed the matter to federal court on the ground that the implied covenant of good faith and fair dealing claim arose under section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)), and filed a motion for summary judgment. The federal district court granted Cedars summary adjudication of this claim and remanded the remaining claims to the superior court. In the superior court, Cedars filed its second motion for summary judgment. Before the hearing on that motion, the trial court granted Fowler leave to file a second amended complaint to add a cause of action for violation of the ICRA. On May 9, 2013, the trial court thereafter granted Cedars's second motion for summary adjudication as to all causes of action with the exception of the ICRA claim. Fowler then filed a third amended complaint and a motion to vacate the summary adjudication order, which the trial court denied. Fowler filed a petition for writ of mandate, seeking to overturn the order denying her motion to vacate, and on July 23, 2013, this court issued a "suggested *Palma*" notice. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.) In response to that notice, Cedars stipulated to vacate the trial court's May 9, 2013 summary adjudication order, without prejudice as to its ability to file another motion for summary judgment. The trial court then vacated its May 9, 2013 order, and Cedars filed the summary judgment motion that is the subject of this appeal.

necessary to resolve their dispute.  [Citation.]"  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.)  Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action.  (*Aguilar, supra*, 25 Cal.4th at p. 849.)  If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate.  In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . .  [T]he defendant need not himself conclusively negate any such element . . . ."  (*Id.* at p. 853.)

On appeal from a summary judgment, an appellate court makes "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  [Citations.]" (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

## II.  Section 432.7

### A.  *Applicable law and legal principles*

Section 432.7 governs the access, use, and disclosure of arrest records. Subdivision (a) of that statute provides in relevant part:  "No employer, whether a public agency or private individual or corporation, shall ask an applicant for employment to disclose, through any written form or verbally, information concerning an arrest or detention that did not result in conviction, or information concerning a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law . . . .  [N]or shall any employer seek from any source whatsoever, or utilize, as a factor in determining any

5

condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record of arrest or detention that did not result in conviction, or any record regarding a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law . . . .  As used in this section, a conviction shall include a plea, verdict, or finding of guilt regardless of whether sentence is imposed by the court.  Nothing in this section shall prevent an employer from asking an employee or applicant for employment about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending trial."

Fowler contends the DOJ press release, the Los Angeles Times article, and verbal notification of her arrest constitute "record[s] of arrest or detention" within the meaning of section 432.7 and that Cedars violated the statute by improperly considering those items when making the decision to place her on an unpaid leave of absence.  Whether the news article, press release, and verbal notification of Fowler's arrest are "records of arrest or detention" within the meaning of section 432.7 is a legal issue that we review de novo. (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491.)

The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.  (*Select Base Materials v. Board of Equalization* (1959) 51 Cal.2d 640, 645 (*Select Base*).)  In determining the intent of the Legislature, we first examine the words of the statute itself, giving them their usual, ordinary meaning.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.)  If possible, every word and phrase of the statute should be given meaning and effect.  (*Select Base, supra*, at p. 645.)  In addition, "'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.]" (*Ibid*.)  Finally, when the Legislature makes express statutory distinctions, we must presume it did so deliberately, and give

6

effect to those distinctions, unless the statutory scheme as a whole reveals the distinction is unintended.  (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1225.)

**B.  Statutory distinction between "information" and "records" and between "applicants" and "employees"**

Subdivision (a) of section 432.7 distinguishes between a "record of arrest or detention" and "information concerning an arrest or detention" as well as the circumstances in which an employer is prohibited from seeking, requesting, or relying on such "record" or "information."  An employer violates the statute by asking an *applicant* for employment to disclose, either verbally or in writing, "*information* concerning an arrest or detention" that did not result in conviction or by seeking or utilizing a "*record* of arrest or detention" when making a hiring decision.  (§ 432.7, subd. (a), italics added.)  In contrast, an employer violates section 432.7, subdivision (a) with regard to a current *employee* only when the employer seeks or utilizes a "*record* of arrest or detention" as a factor in determining a condition of employment.  (*Ibid.*)  Applicants for employment are thus accorded broader statutory protection.

Section 432.7 distinguishes between applicants and employees not only in the scope of protection afforded, but also with regard to the available remedies.  Treble damages and certain other statutory remedies are available only to applicants, whereas employees are entitled only to actual damages.  (§ 432.7, subd. (c);[2] *Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1947.)

**C.  Verbal notification of arrest is "information concerning an arrest"**

Consistent with the broader protection accorded to applicants for employment, the term "information concerning an arrest or detention," as used in section 432.7,

---

[2]  Section 432.7, subdivision (c) states:  "In any case where a person violates this section, or Article 7 (commencing with Section 11140 of Chapter 1 of Title 1 of Part 4 of the Penal Code, the applicant may bring an action to recover from that person actual damages or two hundred dollars ($200), whichever is greater, plus costs, and reasonable attorney's fees.  An intentional violation of this section shall entitle the applicant to treble damages, or five hundred dollars ($500), whichever is greater, plus costs, and reasonable attorney's fees.  An intentional violation of this section is a misdemeanor punishable by a fine not to exceed five hundred dollars ($500)."

7

subdivision (a), has a broader meaning than the term "record of arrest or detention." "Information" includes verbal notification of an arrest or detention whereas the term "record" does not.  (§ 432.7, subd. (a) ["No employer . . . shall ask an applicant for employment to disclose, through any written form *or verbally*, information concerning an arrest or detention"], italics added.)  Under the plain language of section 432.7, subdivision (a), Fowler's verbal notification of her arrest is "information concerning an arrest or detention" and not a "record of arrest or detention."  The statutory proscription against inquiry regarding "information concerning an arrest or detention" applies only to an "applicant for employment," and not a current employee such as Fowler.  Fowler's voluntary disclosure of her arrest, absent any inquiry by Cedars, is another reason why the statutory proscription does not apply.

### D. *The news article and press release are not "records" of arrest*

The statutory prohibition against seeking or utilizing "any record of arrest or detention" does not apply to the Los Angeles Times article and the DOJ press release discussing Fowler's arrest.  Those items, like Fowler's verbal notification, constitute "information" concerning her arrest, and not a "record" of the arrest.

### 1. Penal Code definitions concerning arrest records

Section 432.7 does not define the term "record of arrest or detention."  That same term is used, however, in provisions of the Penal Code, where one would expect to find references to arrest records.  (See, e.g., Pen. Code, §§ 851.7, 851.85, 851.86, 851.90 [concerning the sealing of criminal records "including any records of arrest and detention" by minors and by persons acquitted of a criminal charge].)  These Penal Code provisions make clear that a "record" of arrest or detention means "official" documents and information maintained by law enforcement agencies.

Penal Code section 1203.45, subdivision (a) for example, allows certain juvenile offenders to petition the court for an order "sealing the record of conviction and other *official* records in the case, including records of arrests resulting in the criminal proceeding and records relating to other offenses charged in the accusatory pleading." (Italics added.)  Penal Code section 13301, subdivision (a), defines the term "record" as

8

"the master local summary criminal history information as defined in subdivision (a) of Section 13300." "Local summary criminal history information" is defined in Penal Code section 13300 as "the master record of information compiled by any local criminal justice agency pursuant to Chapter 2 (commencing with Section 13100) of Title 3 of Part 4 pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about the person." (Pen. Code, § 13300, subd. (a)(1).)

Penal Code section 13102 defines "criminal offender record information" as "records and data compiled by criminal justice agencies for purposes of identifying criminal offenders and of maintaining as to each such offender a summary of arrests, pretrial proceedings, the nature and disposition of criminal charges, sentencing, incarceration, rehabilitation, and release. Such information shall be restricted to that which is recorded as the result of an arrest, detention, or other initiation of criminal proceedings or of any consequent proceedings related thereto."

Penal Code section 11105, subdivision (a)(1)(A) defines "State summary criminal information" as "the master *record* of information compiled by the Attorney General pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, fingerprints, photographs, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about the person." (Italics added.) Subdivision (b) of section 11105, which governs the furnishing of criminal records to agencies and officers of the state, expressly refers to the limitations imposed by Labor Code section 432.7.

That the term "record of arrest or detention" as used in section 432.7 refers to a specific category of information maintained by law enforcement agencies was recognized by the court in *Central Valley Chap. of 7th Step Foundation v. Younger* (1979) 95 Cal.App.3d 212 (*Central Valley*). In that case, the plaintiffs alleged that prospective employers had obtained their "arrest records" from the California Department of Justice, and that based on these records, which listed arrests not resulting in convictions, they

9

were not hired, in violation of section 432.7. The court in *Central Valley* discussed each plaintiff's "arrest record" for purposes of the section 432.7 claim as the "State summary criminal history information" as defined in Penal Code section 11105. (*Central Valley*, at p. 220, fn. 2.)

The Los Angeles Times article and the DOJ press release reviewed by Cedars do not come within any statutory definition of a "record" pertaining to arrest or detention. They are not official records and data compiled and maintained by law enforcement agencies for the purpose of indentifying criminal offenders. The Los Angeles Times article and the DOJ press release do not constitute "record[s] of arrest or detention" within the meaning of section 432.7.

### 2. Fowler's interpretation is legally unsupported

Fowler claims that "record of arrest or detention" and "information concerning an arrest or detention" as used in section 432.7 should have the same meaning. Her interpretation would require us to insert the words "information concerning" before the words "record of arrest or detention," in violation of the "'"cardinal rule of statutory construction that . . . a court must not 'insert what has been omitted' from a statute." [Citation.]' [Citation.]" (*Boy Scouts of America National Foundation v. Superior Court* (2012) 206 Cal.App.4th 428, 446.) "When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning. [Citation.]" (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73.) In enacting section 432.7, the Legislature distinguished between "information" concerning an arrest or detention and a "record" of arrest or detention. Conflating the two terms would ignore this distinction and would rewrite the statute in a manner not intended by the Legislature.

Fowler contends the language in section 432.7 prohibiting an employer from seeking "*from any source whatsoever* . . . any record of arrest or detention that did not result in conviction" means that self-disclosure, press releases, and news articles qualify as "record[s] of arrest or detention." (Italics added.) The plain language of the statute does not support this interpretation. The pertinent language states that for purposes of the

10

statutory prohibition against seeking or utilizing a "record of arrest or detention," the source of the arrest record is immaterial. The statute simply makes clear that an employer who obtains an employee's arrest record violates the statute, regardless of the source or means used by the employer to obtain such records.

There is no case that holds that "record of arrest or detention" includes self-disclosure, a press release, or a newspaper article. *Starbucks Corp. v. Superior Court* (2011) 194 Cal.App.4th 820, 827-828, on which Fowler relies, involved a precertification discovery dispute in an attempted class action on behalf of job applicants whom Starbucks allegedly failed to advise not to disclose minor marijuana convictions more than two years old. (*Id.* at p. 822.) It did not concern the rights of current employees under section 432.7, nor did it construe the terms "record of arrest or detention" under that statute.

### E. Fowler raises no issue of material fact

Fowler's claim that Cedars obtained from the DOJ, in addition to the DOJ press release, other records of her arrest or detention which were the basis for the decision to place her on unpaid leave is unsupported by her proffered evidence. The deposition testimony of Navarro cited by Fowler states that Cedars relied on information obtained from the DOJ in making the decision to place Fowler on unpaid leave, but that Navarro could not recall what that information consisted of or who obtained it. Navarro's testimony raises no issue of material fact as to whether Cedars obtained any "record of arrest or detention" from the DOJ.

### F. Summary adjudication of the section 432.7 claim was proper

Cedars did not violate section 432.7 because it did not seek or utilize any "record of arrest or detention" in determining any condition of Fowler's employment.[3] The trial

---

[3] In view of our holding, we do not address Cedars's arguments that it produced substantial evidence of a good faith basis for suspending Fowler while criminal charges against her were pending, that Fowler failed to exhaust her administrative remedies, or that an employer may utilize information concerning a current employee's arrest as a factor in determining a current employee's condition of employment, so long as the arrest is not the sole factor in making such determination.

11

court did not err by summarily adjudicating Fowler's claims for negligent and intentional violation of section 432.7.

## III. ICRA

Fowler contends the trial court erred by summarily adjudicating her cause of action for violation of Civil Code section 1786.53 of the ICRA. That statute provides, in relevant part: "Any person who collects, assembles, evaluates, compiles, reports, transmits, transfers, or communicates information on a consumer's character, general reputation, personnel characteristics, or mode of living, for employment purposes, which are matters of public record, and does not use the services of an investigative consumer reporting agency, shall provide that information to the consumer pursuant to subdivision (b)." (§ 1786.53, subd. (a).) The statute defines "public records" as "records documenting an arrest, indictment, conviction, civil judicial action, tax lien, or outstanding judgment." (Civ. Code, § 1786.53, subd. (a)(3).) A two-year statute of limitations applies, which runs from the date of discovery of the conduct constituting the alleged violation. (Civ. Code, § 1786.52.)

The purpose of the ICRA is to protect consumers who are victims of identity theft from harm, including adverse employment action, based on information attributable to identity theft or that is otherwise erroneous. (Civ. Code, § 1786.) The statute was enacted because "[t]he crime of identity theft in this new computer era has exploded to become the fastest growing white collar crime in America" and because "[t]he unique nature of this crime means it can often go undetected for years without the victim being aware his identity has been misused." (Civ. Code, § 1786, subds. (c), (d).)

Fowler cites the following actions by Cedars that allegedly triggered disclosure obligations under Civil Code section 1786.53: (1) obtaining and reviewing the DOJ press release and Los Angeles Times article describing her arrest and pending criminal charges; (2) attending in July 2011 pretrial criminal hearings and the first two days of the trial in her criminal case, during which Cedars employees took notes of their observations; (3) downloading a DOJ press release that discussed Fowler's exoneration; and (4) viewing

12

and downloading Fowler's "executive profile" from a website linking Fowler to one of the business entities involved in the criminal case.

The trial court properly concluded that there was no evidence that Cedars engaged in any actionable conduct under the ICRA within the two-year statutory period. With regard to the DOJ press release, the evidence showed that Fowler learned in November 2009, more than two years before she commenced the instant action, that Cedars had obtained and reviewed information from the Department of Justice. There was also undisputed evidence that Fowler was shown and given the opportunity to read two news articles discussing her arrest and indictment in January 2010, more than two years before she commenced this action. Fowler's claims with regard to the DOJ press release and the Los Angeles Times article are accordingly time-barred. (Civ. Code, § 1786.52.)

Fowler's allegation that Cedars's representatives attended certain hearings in her criminal case falls outside the scope of the ICRA. None of the hearings concerned Fowler's arrest or indictment for Medicare fraud and thus were not "matters of public record" within the meaning of Civil Code section 1786.53. (Civ. Code, § 1786.53, subd. (a)(3).)

For the same reason, Fowler's allegation that Cedars printed her "Corporation Wiki" executive profile fails to establish an actionable claim under the ICRA. The executive profile identifies Fowler as the president of Ladera Medical Supply, Inc. It does not mention the criminal matter, nor any other "matter of public record" as defined in Civil Code section 1786.53.

The trial court did not err by summarily adjudicating Fowler's ICRA claim.

## IV. Intentional infliction of emotional distress

To successfully resist a motion for summary judgment on a claim for intentional infliction of emotional distress, a plaintiff must provide evidence of "conduct beyond the bounds of human decency." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80 (*Janken*).) Summary adjudication of Fowler's claim for intentional infliction of emotional distress was proper because Fowler failed to introduce any evidence of

13

"extreme and outrageous" conduct by Cedars.  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

Cedars's decision to place Fowler on unpaid leave in November of 2009 and informing the Employment Development Department that she was on a leave of absence in response to a claim for unemployment benefits in the summer of 2001 were personnel management actions that do not support a claim for intentional infliction of emotional distress.  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.  A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress."  (*Janken, supra*, 46 Cal.App.4th at p. 80.) The trial court did not err by summarily adjudicating Fowler's claim for intentional infliction of emotional distress in favor of Cedars.

## V.  Punitive damages

Fowler contends the trial court erred by summarily adjudicating her claim for punitive damages, which she sought for each of her causes of action.  Punitive damages may be awarded only as a remedy for conduct alleged in a particular cause of action. (*McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1163.) Because Cedars established that Fowler cannot recover on any of the causes of action asserted in the third amended complaint, punitive damages are unavailable to her.  The trial court did not err by summarily adjudicating Fowler's claim for punitive damages.

## VI.  Continuance

Code of Civil Procedure section 437c, subdivision (h) mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion.  (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 167.)  The statute provides:  "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as

14

may be just." (Code Civ. Proc., § 437c, subd. (h).) The denial of a continuance under section 437c, subdivision (h) is reviewed under the abuse of discretion standard. (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023.)

Fowler contends the trial court erred by denying her request for continuance of the summary judgment motion under Code of Civil Procedure section 437c, subdivision (h). She claims a continuance was necessary because she needed to obtain two items of evidence: the handwritten notes of Navarro, and notes taken by Winter while she attended certain pretrial hearings and trial dates in Fowler's criminal case.

The record here discloses no abuse of discretion by the trial court. The Navarro notes sought by Fowler were produced to her in November 2013, before Cedars filed the summary judgment motion that is the subject of this appeal. Winter's notes were the subject of a previous unsuccessful motion by Fowler to compel their production. The trial court denied Fowler's motion to compel production of Winter's notes at a hearing held on November 20, 2013. Fowler did not appeal from the order denying her motion to compel and accordingly forfeited the right to challenge the trial court's ruling in this appeal. As Fowler failed to make the necessary showing for a continuance under Code of Civil Procedure section 437c, subdivision (h), the denial of her request for a continuance was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Cedars is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT

15