[Civ. No. 7555.   Third Dist.   May 19, 1949.]

WOODLAND COOPERATIVE RICE GROWERS (a Corporation), Respondent, v. A. R. SMITH et al., Appellants.

Hardin Barry for Appellants.

Pardee & Cady for Respondent.

ADAMS, P. J.—Defendants, appellants before us, executed and delivered to plaintiff their promissory note for $8,300 on or about May 13, 1946, secured by a second deed of trust covering certain real property in Chester, Plumas County. Thereafter defendants turned over to plaintiff one RD-8 caterpillar tractor with bulldozer attachment, either as further security for the note, or as a renting for plaintiff's use in preparing ground for the production of rice.

The note not having been paid by defendants, plaintiff brought this action to foreclose the deed of trust. Defendants filed a counterclaim for the use of the tractor and attachments and damage thereto. The trial court rendered a judgment in favor of plaintiff for the amount of the note, with interest, together with attorney's fees and costs, the total judgment being $9,270.69 plus $37.80 costs, with interest from date of judgment at 7 per cent per annum, and ordered sale of the real property described in the deed of trust. The decree

provided that defendants were entitled to an offset in the sum of $3,875 for rental of the tractor and attachment and for damages thereto, ''such offset however being entirely contingent upon said defendants satisfying in full the above obligation to plaintiff, and that the plaintiff is entitled to have said deed of trust enforced and foreclosed and the said lands and premises hereinafter described sold in the manner prescribed by the law, and the proceeds arising from such sale applied to and upon the payment of said sums of money due as herein set out.'' It also provided ''that if after the payment of the fees and disbursements of said commissioner the balance remaining in his hands shall amount to the total of all the items hereinabove in this paragraph set out, then and in that event the said defendants . . . shall be entitled to have credited against said amount said sum of $3,875 and the balance of the above specified amount shall be paid to plaintiff and provided further that should the balance remaining in the hands of said commissioner after the payment of his cost and disbursements shall amount to less than the whole amount due plaintiff as hereinabove specified then the whole thereof shall be paid to said plaintiff by said commissioner; and if there be any surplus after the making of said payments, he shall pay the same to the defendants . . ., and if the proceeds of said sale be insufficient to pay the amount so found due to the plaintiff, with interest, costs and expenses of sale as aforesaid, and it shall [so] appear from said commissioners return and report of said sale, a further hearing in this cause shall be had for the purpose of establishing the amount of the deficiency judgment, if any, to be entered against the defendants . . ., and the court does hereby retain jurisdiction of this matter for that purpose.'' Subsequently, on motion under section 663 of the Code of Civil Procedure, the judgment was amended to provide that the sale of the real property was subject to the lien of the holder of the first deed of trust.

On this appeal appellants urge, as grounds for reversal, that the offset allowed them as rental for the equipment and damage thereto, should have been allowed absolutely and unconditionally; and that the rental value should have been found to be $990 per month for a period of seven months.

The findings of the court upon which said decree is based recite that defendants authorized plaintiff to take possession of the tractor and attachment, and that they obtained such possession on July 6, 1946, and retained it until February 8, 1947, and used same; that the reasonable value of such use

was $3,500. There was also a finding that plaintiff became liable for damage to the equipment in the sum of $375. There was no specific finding as to whether such equipment was delivered to plaintiff by defendants as further security for the promissory note, as alleged by plaintiff, or was rented to it, as contended by appellants.

Because of the somewhat unusual form of the judgment in this case, a recital of the circumstances surrounding the transactions as presented at the trial seems to be in order. The evidence shows that on January 23, 1946, defendants were, and had been for several years, engaged in renting tractors and similar equipment, their place of business being Chester, Plumas County. On the aforesaid date Mr. Cox, a member and director of Woodland Cooperative Rice Growers, contacted Mr. Smith, seeking the purchase of a tractor and attached equipment for plaintiff; and Smith agreed to secure same within 90 days, for the sum of $8,300. Mr. Cox thereupon delivered to Smith a cashier's check for that amount. Smith failed to secure the equipment and likewise failed and refused to return the $8,300. Under pressure from Mr. Cox for the return of the money advanced, Smith, having no other security to offer, gave plaintiff the promissory note, secured by a second deed of trust upon certain real property in the town of Chester, Plumas County, upon which property one Hubert W. Hill already held a deed of trust securing defendant's note for $7,500.

Mr. Cox, being dissatisfied with the sufficiency of the security, importuned Smith for additional security; and Cox testified that as Smith had been telling him about some tractors that he owned, he asked for a tractor. Smith said he had one "up north," which plaintiff could have in five or six days; and some time in July, 1946, Cox secured possession of same, on order from defendants, which was used to some extent by plaintiff until it was repossessed by the owner, it subsequently appearing that Smith did not own it but was only renting it from the actual owner. At the trial the evidence also revealed that Smith was in financial straits, and also had been indicted and tried for certain undisclosed crimes, which criminal proceedings were dismissed after two juries disagreed.

On the trial of this action Smith's testimony as to why he failed to return the $8,300 advanced to him by plaintiff overtaxes credulity. He said that he had cashed the check in Sacramento and had then gone to San Francisco where he paid the

cash over to a man who claimed to be a representative of the War Assets Administration, and who accompanied him on his drive to San Francisco, for the purchase of the equipment desired by plaintiff. He was unable to give the name of such representative, though he stated that he had done business with him before. He took no receipt for the cash so paid, and even stated that he did not know the name or the street number of the building in San Francisco in the lobby of which he had paid the money over; that this man was usually around the Whitcomb Hotel lobby or along among the government buildings in San Francisco, but that he did not know where his office was, or if he had one; that he had no dealings with any other person connected with the War Assets Administration and had never been able to get the tractor ordered nor a return of the cash.

On the other hand the record shows, and Smith admitted, that he received the $8,300 check; and entire good faith on the part of plaintiff in the transaction is undisputed. Also there is evidence tending to show that the value of the real property described in the trust deeds would not, when sold, bring enough to satisfy the indebtedness secured thereby, and that a deficiency in the amount due plaintiff would result. We assume that for these reasons the trial court ordered that the amount claimed by defendants as an offset should be allowed conditionally, and its allowance, at least in full, be made contingent upon full payment to plaintiff of the $8,300 advanced, instead of deducting the amount of said offsets from the amount found due to plaintiff and giving judgment to plaintiff for the difference as appellant claims should have been done, since such a judgment would, in effect, result in payment to defendants of the amount of their offset, while, should the sale of the property result in an amount insufficient to pay plaintiff in full, plaintiff would be left with only a deficiency judgment of doubtful if any value.

No question is raised in the case that by retaining jurisdiction of the cause for the purpose stated, the judgment became, in effect, interlocutory or nonappealable. The action is one in equity, and in rendering its decision the trial court was obviously seeking an equitable solution. Defendants were subject to the maxim that he who seeks equity must do equity; and regarding the equity powers of a court it was said in *Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 646 [275 P.803]: ''A court sitting in equity, and having taken jurisdiction, has broad powers. It may grant relief as varied and diversified as

the means employed to produce the grievance complained of, and is not bound to the strict legal rights of the parties." That decision is cited in *Tomas* v. *Vaughn*, 63 Cal.App.2d 188, 193 [146 P.2d 499], where it is said: "Once it acquires jurisdiction, equity's broad powers will permit the granting of relief as varied and diversified as the means employed to produce the injury complained of. And in so doing equity is not bound to the strict legal rights of the parties."

Since the allowance of defendants' set-off was contingent, and the trial court by its judgment retained jurisdiction "for the purpose of establishing the amount of the deficiency judgment, if any, to be entered against the defendants," we assume that after sale of the real property the trial court may redetermine the amount due defendants on their offset.

As for the finding of the court regarding the value of the use to which plaintiff put the equipment while it was in its possession, the $3,500 found is within the scope of the testimony regarding reasonable rentals, and we cannot say, as matter of law, that it should have been more or less.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.