[No. B123240. Second Dist., Div. Three. Aug. 29, 2000.]

DICKSON, CARLSON & CAMPILLO et al., Plaintiffs, Cross-defendants and Appellants, v.
DEBRA POLE et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

O'Neill, Lysaght & Sun, Brian C. Lysaght, Paul D. Murphy; Greines, Martin, Stein & Richland, Kent L. Richland, Robin Meadow and Barbara W. Ravitz for Plaintiffs, Cross-defendants and Appellants.

Keker & Van Nest, John W. Keker, Elliot R. Peters, Christopher C. Kearney and Steven A. Hirsch for Defendants, Cross-complainants and Respondents.

## OPINION

**CROSKEY, Acting P. J.**—Two partners withdrew from a law partnership and took the firm's largest client with them. The remaining partners decided to immediately dissolve the firm and the former partners sued the two departing partners and their new firm for declaratory relief, accounting, breach of fiduciary duty, breach of contract, and other causes of action in two separate actions seeking, among other things, their share of the profits earned from the completion of the partnership's unfinished business representing a defendant in numerous product liability cases. The trial court in the first action (1) found that the plaintiffs had a fiduciary duty to complete some of the unfinished business but had failed to do so and therefore had failed to "do equity," (2) barred the plaintiffs from recovering in the accounting *any* of the profits earned by the defendants, and (3) referred the accounting cause of action to the court hearing the second action, which primarily had asserted tort claims against the departing partners. The trial court in the second action then consolidated the two actions and determined that the prior ruling in the first action completely precluded the recovery of tort and contract damages based on profits earned by the defendants after the date of dissolution, granted a motion in limine excluding all evidence of those profits, and then granted a motion for judgment on the pleadings in favor of the defendants.

The plaintiffs challenge both rulings on appeal. We conclude that the equitable maxim to "do equity" is not a complete defense in an accounting action and also does not preclude the recovery of damages on the plaintiffs' tort and contract causes of action.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Law Firm Dissolution*

Plaintiff Dickson, Carlson & Campillo (DCC) was a law partnership. Plaintiffs Ralph A. Campillo, Robert L. Dickson, Jeffrey J. Carlson, Hall R. Marston, Roxanne M. Wilson, David J. Fleming, George E. Berry, and Mark S. Geraghty and defendants Debra Pole and William Fitzgerald were its general partners. The firm represented Baxter Healthcare Corporation (Baxter), the successor in interest to a manufacturer of breast implants, as a defendant in many actions, and coordinated its defense in breast implant litigation nationwide. Pole served as Baxter's national coordinating counsel for the litigation and Fitzgerald assisted her. Several of the other partners also represented Baxter and assisted in its nationwide coordinated defense.

Pole and Fitzgerald sought to leave the firm together with several other attorneys and employees to join Brobeck, Phleger & Harrison (Brobeck) and

sought to take the Baxter litigation with them. They provided Brobeck with detailed information concerning the profitability to DCC of the Baxter litigation, including DCC's historical billings per attorney, and met with Baxter to obtain its consent. After Brobeck agreed to admit Pole and Fitzgerald as partners, and Baxter agreed to retain Brobeck as counsel, they informed their partners on August 28, 1995, that they were leaving DCC. They requested a waiver of the provision of the partnership agreement requiring 90 days' notice of intent to withdraw, but the firm refused.

DCC's other partners concluded that they could best protect their interests in profits from the pending Baxter litigation by dissolving the firm. On September 20, 1995, they met without notifying Pole and Fitzgerald and voted to dissolve the partnership effective immediately. The firm then reconstituted itself as a new partnership (DCC-2) with the same name and essentially the same partners except Pole and Fitzgerald. The partners withheld from Pole and Fitzgerald their profit distributions from some predissolution work and their share of the liquidation proceeds and deposited those amounts in interest-bearing accounts pending resolution of the present dispute.

DCC's remaining partners continued to work on some of the Baxter litigation that was pending on the date of dissolution, although most of the pending litigation followed Pole and Fitzgerald to Brobeck. The remaining partners declined to continue to represent Baxter in certain cases that were pending upon dissolution and began to represent a competing breast implant manufacturer.

2.  *The Two Actions*

DCC[1] sued Pole, Fitzgerald, and Brobeck in October 1995 (Super. Ct. L.A. County, No. SC039135; hereafter, the accounting action) alleging two counts for declaratory relief and a third for accounting seeking to recover, among other things, part of the profits earned from the defendants' representation of Baxter in litigation in which DCC had represented Baxter as of the date of dissolution.[2] DCC and each of the remaining partners individually initiated another action against Pole, Fitzgerald, and Brobeck in

[1]DCC purported to sue in the name of "Ralph A. Campillo, as Liquidating Partner of Dickson, Carlson & Campillo." DCC is the real party in interest and must sue in its own name (Code Civ. Proc., §§ 367, 369.5), although the partners may join as individuals.

[2]The declaratory relief counts requested a judgment providing that the remaining partners were entitled to share in the postdissolution profits earned by the defendants from DCC's unfininshed business and that the remaining partners were entitled to share in DCC's goodwill. The accounting count requested an accounting and distribution of profits from the unfinished business.

November 1995 (Super. Ct. L.A. County, No. SC039264; hereafter, the second action) alleging in their amended complaint breach of fiduciary duty, inducing breach of fiduciary duty, intentional interference with prospective economic advantage, intentional interference with contractual relations, breach of contract, breach of implied covenant of good faith and fair dealing, unfair competition, and unjust enrichment.

Pole and Fitzgerald cross-complained against DCC, DCC-2, and the individual partners in the second action alleging breach of fiduciary duty, conversion, unjust enrichment, accounting, breach of contract, breach of implied covenant of good faith and fair dealing, and failure to disclose the partnership books and information upon request (former Corp. Code, §§ 15019, 15020).

The court consolidated the two actions for pretrial purposes in January 1997. DCC-2 dissolved in December 1997. Both cases were scheduled to begin trial in January 1998, but Pole, Fitzgerald, and Brobeck successfully moved to continue the trial in the second action to allow further discovery concerning the plaintiffs' claimed damages.

3. *Trial and Motion for Judgment in the Accounting Action*

The court conducted a nonjury trial in the accounting action in January 1998. Pole, Fitzgerald, and Brobeck moved for judgment (Code Civ. Proc., § 631.8) after the close of DCC's case on the ground that DCC and its remaining partners were not entitled to share in the profits earned from Brobeck's representation of Baxter. They argued that although ordinarily all partners are entitled to share the postdissolution profits earned by individual partners from partnership business that was unfinished at the time of dissolution, the remaining partners here had failed to "do equity" because they had breached their common obligation to complete the firm's unfinished business by refusing to continue to represent Baxter in certain pending litigation. They also argued, among other things, that the remaining partners had unclean hands because they failed to complete the unfinished business, excluded Pole and Fitzgerald from partnership meetings, and withheld partnership funds that were due to Pole and Fitzgerald.

The court found that the remaining partners had breached their fiduciary duties owed to Pole and Fitzgerald by refusing to complete a substantial amount of DCC's unfinished business, excluding Pole and Fitzgerald from partnership meetings concerning firm dissolution, and withholding partnership distributions. It concluded that the plaintiffs had failed to do equity and therefore were barred from recovering part of the profits from DCC's

unfinished business in an accounting action. It did not conclude that the plaintiffs had unclean hands and rejected the defendants' proposed finding of unclean hands.[3] It also concluded as a matter of law that a law partnership has no goodwill to be distributed upon dissolution and, in any event, the plaintiffs had abandoned any claim to goodwill by failing to litigate the issue. It granted the motion for judgment as to the declaratory relief counts only, referred the accounting count to the court in the second action, and entered a "Judgment" so stating on April 14, 1998.

### 4. *Consolidation of the Two Actions and Judgment*

A jury trial in the second action was scheduled to commence in late April 1998 before another judge. Pole, Fitzgerald, and Brobeck moved in limine to exclude evidence of their postdissolution income from DCC's unfinished business, arguing that the ruling in the accounting action precluded the recovery of any part of that income and was binding in the second action. At the hearing on the motion on April 29, 1998, the court suggested that if the ruling in the accounting action were binding in the second action, the postdissolution profits from DCC's unfinished business that DCC was pre-cluded from recovering in the accounting action could not be recovered as tort or contract damages in the second action as a matter of law. It also suggested that the ruling in the accounting action that the plaintiffs had abandoned their claim for goodwill in the accounting would preclude any recovery in the second action of postdissolution profits from matters that were not pending upon DCC's dissolution.

The court stated that the two actions should have been consolidated and tried together and that the court in the accounting action effectively consoli-dated them by referring the accounting count from the accounting action to the court deciding the second action. The defendants' counsel argued that it was not too late to formally consolidate the two actions, even after entry of judgment in the accounting action, and moved to consolidate. The court stated its tentative ruling to consolidate the two actions and grant the motion in limine excluding evidence of the defendants' postdissolution income and directed counsel to return the next day.

The plaintiffs appealed the judgment in the accounting action the next day and returned to the trial court in the second action to argue the motions further. The court concluded that the judgment in the accounting action was

---

[3]That part of the defendants' proposed finding was stricken from the statement of decision prepared for the court by the defendants.

not an appealable final judgment and consolidated the two actions.[4] It also granted the defendants' motion to exclude evidence of their income earned after the date of DCC's dissolution. The plaintiffs stated that those damages were all of the compensatory damages that they sought in the second action. Counsel then tentatively agreed to conclude the matter by way of a motion for judgment on the pleadings against the complaint and a stipulated damage award in favor of Pole and Fitzgerald on the cross-complaint for the withheld distributions.

The court entered a jointly proposed judgment on June 4, 1998, stating that it had granted the defendants' motion for judgment on the pleadings against the complaint and awarding Pole and Fitzgerald a total of $1,093,111 in damages on the cross-complaint. The plaintiffs appeal the judgment.

## CONTENTIONS

The plaintiffs contend they are entitled to share in the postdissolution profits from the defendants' completion of DCC's unfinished business in the breast implant litigation, and the ruling in the accounting action barring their recovery on equitable grounds was error; and even if the ruling were correct, it would not preclude damages in the second action based on other tort and contract theories of recovery. They do not appeal the judgment on the cross-complaint.

## DISCUSSION

### 1. Standard of Review

The ruling in the accounting action on the defendants' motion for judgment involved factual, discretionary, and legal determinations, including (1) factual findings as to the plaintiffs' conduct in the dissolution and their failure to complete certain unfinished partnership business, (2) a discretionary ruling that the conduct should be deemed inequitable, and (3) a legal determination that the failure to "do equity" was a complete defense in an accounting action. Of those issues, we address only the legal determination that the failure to "do equity" is a complete defense, exercising our independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

We also review de novo the ruling in the second action that the prior ruling in the accounting action precluded the recovery of tort and contract damages as a matter of law.

---

[4]This court later concluded that the judgment in the accounting action was only an interlocutory ruling and therefore not an appealable final judgment; the plaintiffs' appeal was dismissed on the defendants' motion on June 6, 1998 (*Dickson, Carlson & Campillo v. Pole*, No. B121973 [nonpub. opn.]).

## 2. *Postdissolution Profits from Unfinished Partnership Business*

■ Partners are not entitled to compensation for acting in the partnership business other than their share of profits, absent an agreement to the contrary.[5] (Former Corp. Code, § 15018, subd. (f).)[6] A partnership does not terminate upon dissolution but continues until the winding up of partnership affairs is completed (former Corp. Code, § 15030), so the unfinished business of a dissolved partnership is partnership business subject to the no-compensation rule. (*Jewel v. Boxer* (1984) 156 Cal.App.3d 171, 176 [203 Cal.Rptr. 13]; *Rosenfeld, Meyer & Susman v. Cohen* (1983) 146 Cal.App.3d 200, 219-220 [194 Cal.Rptr. 180], disapproved on another point in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10 [28 Cal.Rptr.2d 475, 869 P.2d 454].) The distribution of profits from the completion of a partnership's unfinished business can be effected in an accounting. (Former Corp. Code, §§ 15021, subd. (1), 15022, 15043; *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1051 [237 Cal.Rptr. 14].)

The partners of a dissolved partnership owe each other a fiduciary duty to complete the partnership's unfinished business, and the failure to discharge that duty is actionable. (*Osment v. McElrath* (1886) 68 Cal. 466, 469 [9 P. 731]; *Rosenfeld, Meyer & Susman v. Cohen, supra,* 146 Cal.App.3d at pp. 216-217; see *Jewel v. Boxer, supra,* 156 Cal.App.3d at p. 179.) The fiduciary duty includes an obligation to act in the highest good faith and not to obtain any advantage over the other partners in partnership affairs (*Oliker v. Gershunoff* (1987) 195 Cal.App.3d 1288, 1305 [241 Cal.Rptr. 415]), such as by causing another partner to bear a disproportionate burden of unfinished business to complete (see *Jewel v. Boxer, supra,* 156 Cal.App.3d at p. 179). The remedy for breach of that duty ordinarily is money damages, which can be credited in an accounting.

## 3. *The Obligation to Do Equity*

■ "One who seeks equity must do equity" is a fundamental maxim of equity jurisprudence. (2 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 385, pp. 51-53.) It is often stated that a court will not grant equitable relief

---

[5] An exception exists for partners who survive the death of another partner (former Corp. Code, § 15018, subd. (f); see *Chazan v. Most* (1962) 209 Cal.App.2d 519, 523 [25 Cal.Rptr. 864]), which is not relevant here.

[6] The Uniform Partnership Act (former Corp. Code, § 15001 et seq.) was repealed effective January 1, 1999 (Stats. 1996, ch. 1003, § 1.2), and replaced by the Uniform Partnership Act of 1994 (Corp. Code, § 16100 et seq.). The former act governs actions commenced and rights accrued before January 1, 1997 (Corp. Code, § 16112), and therefore governs the present action.

unless the plaintiff acknowledges or provides for the defendant's equitable rights arising from the same subject matter. (*Id.* at p. 52.) A more accurate description of the maxim in operation is that a court can compel a plaintiff seeking equitable relief to accommodate the equities favoring the defendant by conditioning the plaintiff's relief upon the enforcement of those equities. (*Id.*, §§ 386, 388, pp. 56, 62; see *Stein v. Simpson* (1951) 37 Cal.2d 79, 83 [230 P.2d 816], quoting 2 Pomeroy, *supra*, § 386, pp. 55-56; *Dool v. First National Bank* (1929) 207 Cal. 347, 354 [278 P. 233].) The plaintiff need not have acted inequitably for the maxim to be given effect, as long as equitable rights favoring the defendant arise from the same matter in controversy. (2 Pomeroy, *supra*, §§ 387, 397, pp. 59-60, 91.)

The obligation to "do equity" is not a complete defense to an action (2 Pomeroy, Equity Jurisprudence, *supra*, § 397, p. 91), unless the plaintiff fails to comply with the conditions imposed or the court cannot accommodate the equities favoring the defendant in granting the relief and to grant relief to the plaintiff without affording relief to the defendant would be inequitable (see 27A Am.Jur.2d (1996) Equity, § 124, p. 604; 30A C.J.S. (1992) Equity, § 96, pp. 296-297, 298).

■ The "do equity" doctrine differs from that of unclean hands ("One who comes into equity must come with clean hands"). The defendants confuse these two doctrines. Unclean hands, unlike "do equity," requires inequitable conduct by the plaintiff in connection with the matter in controversy and provides a complete defense to the plaintiff's action. (2 Pomeroy, Equity Jurisprudence, *supra*, § 397, p. 91; see *DeGarmo v. Goldman* (1942) 19 Cal.2d 755, 765 [123 P.2d 1].) The *DeGarmo* court explained this distinction. It stated that the doctrine of unclean hands "differs from the maxim 'he who seeks equity must do equity' in that the latter assumes that different equitable rights have arisen from the same subject matter or transaction, some in favor of plaintiff and some in favor of the defendant so that the plaintiff is required to recognize and provide for defendant's rights and his relief is granted only upon a showing that defendant's rights are protected." (*DeGarmo v. Goldman, supra,* 19 Cal.2d at p. 765.)[7]

The defense of unclean hands does not apply in every instance where the plaintiff has committed some misconduct in connection with the matter in

---

[7]The full discussion of this distinction by Pomeroy is also instructive: "In applying the ['do equity'] maxim, He who seeks equity must do equity, as a general rule regulating the action of courts, it is necessarily assumed that different equitable rights have arisen from the same subject-matter or transaction, some in favor of the plaintiff and some of the defendant; and the maxim requires that the court should, as the price or condition of its enforcing the plaintiff's equity and conferring a remedy upon him, compel him to recognize, admit, and provide for the corresponding equity of the defendant, and award to *him* also the proper relief. The maxim does not assume that the plaintiff *has done* anything unconscientious or inequitable; much less does it refuse to him all relief; on the contrary, it grants to him the remedy to which *he* is

controversy, but applies only where it would be inequitable to grant the plaintiff *any* relief. (*Bradley Co. v. Bradley* (1913) 165 Cal. 237, 242 [131 P. 750]; *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 239-240, fn. 1 [193 Cal.Rptr. 312].) The court must consider both the degree of harm caused by the plaintiff's misconduct and the extent of the plaintiff's alleged damages. (*Republic Molding Corporation v. B. W. Photo Utilities* (9th Cir. 1963) 319 F.2d 347, 349-350.) Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1060 [272 Cal.Rptr. 250].) The decision of whether to apply the defense based on the facts is a matter within the trial court's discretion. (*Lovett v. Carrasco* (1998) 63 Cal.App.4th 48, 55 [73 Cal.Rptr.2d 496].)

█ A court's discretion to grant an equitable defense such as unclean hands is not unlimited. The court must consider the material facts affecting the equities between the parties; the failure to do so is an abuse of discretion. (Cf. *Dorman* v. *DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815-1817 [42 Cal.Rptr.2d 459].) If requested, factual findings concerning the nature of the misconduct and the extent of prejudice or damage to the defendant relative to the plaintiff's damages or other requested relief may be necessary to support the court's exercise of discretion and facilitate effective review. (See Code Civ. Proc., §§ 662, 634.) A decision based on bare "equity" unsupported by established precedent and lacking evidentiary support does not disclose the proper exercise of discretion.

█ The trial court here found that the plaintiffs had breached their fiduciary duties owed to Pole and Fitzgerald as to part of the unfinished business and committed other misconduct in connection with the dissolution, *but it rejected the unclean hands defense.*[8] Instead, relying on the "do equity" doctrine, the court barred the plaintiffs from recovering any relief in the

---

entitled, but upon condition that the defendant's equitable rights are protected by means of the remedy to which *he* is entitled. On the other hand, the maxim now under consideration, He who comes into equity must come with clean hands, is much more efficient and restrictive in its operation. It assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him *all* recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party, who, as *actor,* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." (2 Pomeroy, Equity Jurisprudence, *supra,* § 397, pp. 91-92, fn. omitted.)

[8]We need not address the issue of whether the trial court abused its discretion by applying the unclean hands defense in these circumstances, because the court here expressly rejected the unclean hands defense.

accounting action. It made no effort to quantify the damages caused by the plaintiffs' inequitable conduct so as to account for that amount in the accounting, as the "do equity" doctrine requires. There was no legal basis to deny *all* relief under the "do equity" doctrine, and the court had no discretion to do so. It is therefore necessary for us to return this matter to the trial court for a resolution of these issues.

### 4. *Plaintiffs' Tort and Contract Remedies in the Second Action*

■ Our reversal of the ruling barring the plaintiffs' recovery in the accounting action necessarily compels reversal of the judgment on the pleadings in the second action based on that ruling. Moreover, apart from the reversal, the ruling in the accounting action would not preclude all of the plaintiffs' damages in the second action as a matter of law.

The plaintiffs in the second action sought to recover tort and contract damages arising from the defendants' alleged misconduct before the date of dissolution, while the accounting action was based on the defendants' conduct after the date of dissolution. This is an important distinction that was ignored by the trial court's conclusion that the ruling in the accounting action necessarily precludes the damage claims asserted by the plaintiffs in the second action. In the latter action, plaintiffs' claims focused on the alleged *tortious misconduct of the defendants* which occurred in the months *preceding* defendants' resignations in September of 1995.[9] On the other hand, the accounting action focused exclusively on the *actions of the defendants*, which occurred *after* their departure, with respect to the division of fees from the unfinished business of DCC.[10]

In addition, the damages sought by the plaintiffs in the second action were not identical to its claims in the accounting action. The plaintiffs' claimed damages in the second action included not only their share of the profits from the defendants' completion of DCC's unfinished business as they sought in the accounting action, but also additional damages arising from the loss of future business. A plaintiff is entitled to seek the same damages based on different theories of recovery. (*Bertero v. National General Corp.* (1974)

---

[9]For example, (1) Brobeck's alleged offer to Pole and Fitzgerald of substantial financial inducements to leave DCC and bring with them the book of business with Baxter, (2) Pole and Fitzgerald's alleged act of turning over to Brobeck confidential DCC financial information and (3) Brobeck's alleged use of that confidential information in the preparation of a plan to induce Baxter to commit to transferring its business to Brobeck.

[10]The record reflects that these very different matters were intentionally treated as entirely separate by both the trial court and the parties. The court's rulings in the accounting action made it clear that it did not want to hear any evidence relating to the defendants' pre-September 1995 tortious misconduct, but only evidence concerning the post-September 1995 division of unfinished business income.

13 Cal.3d 43, 57 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) A complete defense to one theory of recovery is not necessarily a complete defense to other theories of recovery seeking the same, and additional, damages. A court applying an equitable defense must exercise its discretion by considering the relative equities of the parties with respect to the conduct relevant to the particular cause of action, which the court here failed to do. The failure to exercise discretion is an abuse of discretion. (*Richards, Watson & Gershon v. King* (1995) 39 Cal.App.4th 1176, 1180 [46 Cal.Rptr.2d 169].)

### DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Plaintiffs shall recover their costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied September 27, 2000, and respondents' petition for review by the Supreme Court was denied November 15, 2000.