Filed 12/26/24  Hatch v. Cendana CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBORAH HATCH et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> INEE CENDANA, <br><br> Defendant and Respondent. | B327911 <br><br> (Los Angeles County <br> Super. Ct. No. LC103648) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Shirley K. Watkins, Judge.  Affirmed.

Klapach & Klapach, Joseph S. Klapach; Law Offices of Tracey P. Hom, Tracey P. Hom; Stein Law Firm and Jay Stein for Plaintiffs and Appellants.

Jeremiah Flores Valdez for Defendant and Respondent.

_____

"No one can take advantage of his own wrong."  (Civ. Code, § 3517.)  Yet that is exactly what Deborah Hatch (Hatch)

attempted to do when she filed this action, along with two corporate entities, Caritas Home Health Providers, Inc. (Caritas) and Unified Care Services, Inc. (Unified), against her coshareholder Inee Cendana (Cendana). We agree with the trial court's 152-page statement of decision that Hatch's unclean hands bars not only her recovery of any damages from Cendana, but also any claim by Caritas and Unified against Cendana. Thus, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of a dispute between the two shareholders (Hatch and Cendana) of two closely held corporations (Caritas and Unified). After their relationship soured, Hatch and Caritas brought this action against Cendana and others, alleging individual and derivative claims on behalf of Unified, which was also named as a nominal defendant. Cendana responded with a cross-complaint against Hatch and Caritas.

Between May 2019 and January 2022, the trial court conducted a bench trial on the operative pleadings.[1]

*Statement of decision*

In February 2023, the trial court issued its final statement of decision. What is clear from the trial court's detailed ruling is its disdain for all parties involved in this litigation, and its repugnance with Hatch's attempt to recover damages from Cendana.

<u>Both Hatch and Cendana pillaged the two corporations</u>

---

[1] The trial had many starts and stops due to COVID, illness, family emergencies, a flood at the courthouse, nonworking elevators, congested calendars, and other issues.

It found:  "In this case, the credible and substantial evidence is that both Inee Cendana and Deborah Hatch knowingly (individually, and in their roles as officers and directors of Unified and Caritas) intentionally, and conspiratorially engaged in conduct which made them both guilty of unclean hands, including but not limited to:  engaging in improper, unethical, and probable illegal conduct, grossly financially mismanaging their businesses, making misrepresentations to government entities and to each other, taking unfair advantage of their businesses and each other, treating the finances of their businesses like their personal money available for personal expenses, charging personal expenses to the businesses without reimbursement, taking tax deductions improperly (and then blaming their tax preparer for it), disregarding corporate formalities, self-dealing to the extreme, being untruthful under oath, acting in conflict of interest between their individual interests and the [corporations'] best interests, violating their fiduciary and ethical duties to each other and to the corporations of which they were officers, violating their statutory duties to the corporations and each other, failing to comply with California corporation laws, and misrepresenting the financial condition of the corporations."  "The substantial and credible evidence is that both of them failed to act in the best interests of the corporations and each other, failed to act honestly, failed to act lawfully, and engaged in unconscionable self-dealing.  Indeed, Ms. Hatch continued throughout the trial to engage in self-dealing."

The trial court continued:  "Deborah Hatch and Inee Cendana *did not commit innocent mistakes*.  The credible evidence supports the court's findings that their actions were

3

*deliberate* actions of disloyalty, self-dealing and gross negligence. They deliberately engaged in self-dealing and questionable transactions. They both acted with conscious disregard of the corporations' interests. The key factor here that informs the court's decision was that these were two persons, acting without corporate formalities, making decisions about how they were going to spend 'their' money. They never acted like a corporation (except Deborah Hatch obviously attempted to do so just before filing suit and in consultation with the plaintiffs' attorneys in order to attempt to block Inee Cendana's rights)."

In fact, there was "credible testimony . . . that they were both *fully cognizant* of exactly what they were doing and what the other was doing with their joint businesses, both agreed with their own and each other's conduct and use of business funds, both took personal loans which were not paid back, both contributed to inaccurate record keeping, both knew what they were doing, and have known for years. Both lied in court under oath." As a result, the doctrine of unclean hands applied, and Hatch and Cendana were not entitled to any relief on their individual claims against each other.

<u>Corporations were not entitled to monetary compensation</u>

The trial court also denied "monetary compensation" to Caritas and Unified on the grounds that they "were solely under the control and ownership of Inee Cendana and Deborah Hatch. Plaintiffs' unclean hands prevents recovery of monetary damages against any defendant." It found "Hatch's 'fiction' of proceeding on a 'derivative claim' when she is the only person whom she claims would benefit [to be] further evidence of self-dealing and she proceeded in the face of a substantial conflict of interest. . . . [Her] refusal to recognize Inee Cendana's interest in

4

the corporations, acknowledged by her prior to and during litigation, were fictions created after retention of counsel solely for the purpose of taking advantage of Inee Cendana and denying her rights as a shareholder and officer of the corporations."

"Because of the manner in which Deborah Hatch and Inee Cendana treated the corporation's money and bank accounts like it was their own money, the court finds that the corporation was a sham. There were no corporate formalities. There were no corporate minutes. There was no written record of decisions concerning the company. There were no formal, recorded votes. Nothing was put in writing about the large expenditures of the company or loans. Deborah Hatch and Inee Cendana borrowed money from the business without a written record or without signing notes. Their conduct was reckless and dishonest. There were no annual meetings. There were no bylaws which they followed. Importantly, Deborah Hatch failed in her obligation as an officer and director to comply with her duty of inquiry and her duty of loyalty. [Citations.] Deborah Hatch and Inee Cendana were not disinterested directors; they were engaged in self dealing."

In addition: "As Deborah Hatch, a wrongdoer in this case, held herself out to be the President and Chief Executive Officer of Caritas[, she] has waived and/or is estopped to claim any damage, either on her behalf, or on behalf of Caritas, for the alleged wrongful acts of Inee Cendana." "[A]t all times, Deborah Hatch was aware of the acts, acquiesced, and participated in their commission." She also failed "to reasonably investigate" any alleged misconduct. Worse, "[s]he did not show any remorse for her own actions," and "[s]he did not accept responsibility for her own actions."

The trial court also found: "If any wrongful conduct of any defendant did cause plaintiffs any harm, . . . they are barred from recovery based on the doctrine of unclean hands in that the plaintiffs, themselves, acted in breach of their fiduciary duties, actively engaged in fraud, engaged in probable illegal activities, [and] changed the financial records of the company so as to cast a wide net of unreliability over all of the financial records that plaintiffs use to support their claims."

Plaintiffs' claim that Cendana took more money from the corporations than she was entitled to

"It does not go unnoticed that a prime motivating factor in pursuing litigation was Deborah Hatch's belief that of their ill gotten gains, Inee Cendana got more than she did. First, the court denies that the evidence preponderates that Inee Cendana got 'more money' than Deborah Hatch did." In this regard, the trial court found Hatch's purported evidence of monies that either Cendana received or were paid to persons for Cendana's benefit "inherently suspect," given the fact that plaintiffs did not allow Cendana to conduct her own financial independent investigation of the corporations' original financial records.

Furthermore, plaintiffs' financial records were not reliable, and their expert testimony were not credible. "As there was no [proper and provable] accounting done of the amount of money that Ms. Hatch improperly took, then the numbers attributed to Ms. Cendana are also suspect. There can be no decision that Ms. Cendana took more money than Ms. Hatch without a proper accounting. Plaintiffs' experts acknowledge [that] they only did math to calculate Ms. Hatch's money; there was no determination as to whether the money was properly taken, whether any money

6

paid to others associated with Ms. Hatch was proper and those amounts."

Hatch's conflict of interest

The trial court was also troubled by the obvious conflict of interest between Hatch and Caritas in connection with this litigation. "Ms. Hatch testified that even though the only owners of Caritas were herself and Ms. Cendana, without consulting with Ms. Cendana at the end of 2014, Ms. Hatch hired a lawyer (Ms. Hom) to represent Caritas. This was before Ms. Cendana was told to not come back to Caritas, thereby creating a conflict of interest. This conflict was never resolved because Ms. Hom represented Caritas and then filed a lawsuit on behalf of Caritas against only Ms. Cendana when the best interests of Caritas was to sue Ms. Hatch as well. The failure of Caritas to sue Ms. Hatch for her own wrongdoing shows the substantial conflict of interest in this case." In fact, the trial court found credible evidence that Hatch retained an attorney "*for herself personally* at the expense of Caritas," further violating her ethical and fiduciary duties to Caritas. The trial court also found that Caritas was paying for Hatch's representation in her derivative claims; "Unified ha[d] no assets other than the loan due from the sale of its assets. This [was] also a breach of fiduciary duty to Caritas and misuse of its funds. Hundreds of thousands of dollars in attorney fees, as acknowledged by counsel to the court, were charged to Caritas *solely for [Hatch's] own personal benefit*."

Willful blindness

As set forth above, the trial court expressly rejected Hatch's claim that she did not know what Cendana was up to. Even if she did not know, "she acted in deliberate ignorance or willful blindness of her obligations as an officer, director, and

7

shareholder of a corporation."  "Her claims of lack of knowledge are a sham and are being used solely to shield herself from years of her own fraudulent conduct.  Her plan was not successful.  She is not off the hook for her own wrongful activities.  This is the classic case in which the doctrine of 'unclean hands' applies.  She cannot recover money from her co-conspirator Inee Cendana, with whom Deborah Hatch jointly raided profits from their businesses, by com[ing] to court and claiming that Inee Cendana made more ill-gotten gains [than] she did."

"Not only does the doctrine of willful blindness have applicability to Deborah Hatch's personal claims, but it also has applicability to the [corporations'] claims as well.  Under this doctrine, a corporation can be held liable for the conscious avoidance of facts that would otherwise indicate wrongful activity.  If a corporation or its agents strongly suspect that they are partaking in illegal activities yet fail to investigate, the corporation may be held liable if the circumstances demonstrate deliberate avoidance of information.  Thus, a corporation cannot escape liability merely by refusing to learn of the illegal activities of its agents."

Winding down of the corporations

Although the trial court found that Cendana was "not entitled to [any] monetary recovery because of her own fraud and bad faith conduct," she was "entitled to have a board meeting scheduled, she [was] entitled to have her board position and she [was] entitled to vote her shares.  After that the court will order winding down and dissolution of the corporation after appointment of a Receiver."

In so ruling, the trial court relied upon Corporations Code section 1800 and found all elements met.  After all, "the conduct

8

of both directors and officers of . . . Unified and Caritas [had] been in bad faith, in breach of their fiduciary duties, and fraudulent. Deborah Hatch [had] been and [was] continuing to exercise total financial control over both corporations."

"As to Unified, [the trial court found that] Hatch . . . divested . . . Cendana of 50% of her shares of Unified without a documentary trail or corporate action, and . . . falsely advised the IRS under oath that Inee Cendana [was] not a shareholder. The court [found] that Inee Cendana [was] a 50% shareholder with Deborah Hatch. Accordingly, as the corporation [had] an even number of directors who [were] equally divided and [could not] agree as to the management of its affairs, so that its business [could] no longer be conducted to advantage or so that there [was] danger that its property and business [would] be impaired or lost, and the holders of the voting shares of the corporation [were] so divided into factions that they [could not] elect a board consisting of an uneven number, the court [ordered] an involuntary winding down and dissolution of Unified. After entry of judgment, the court will retain jurisdiction for appointment of a Receiver and supervision of the winding down and dissolution process.

"As to Caritas, Deborah Hatch . . . had complete control of the finances of the corporation since Ms. Cendana was asked to leave and not return in March 2015. However, even she agree[d] that Ms. Cendana [was] still holder of 40% of the shares of Caritas. After basically kicking Ms. Cendana out, she conducted a 'governing body' meeting and since then . . . continued to misuse the assets of Caritas. She . . . acted in violation of her fiduciary duties to the corporation and to Ms. Cendana. She . . . acted fraudulently. She ha[d] unclean hands. The Court

9

[found] that any 'board' meetings (since Ms. Cendana was told not to return) [were] illegal and in bad faith. The court [also found] that any decisions made by the 'board' since March 2015 [were] void."

The trial court continued: Hatch "breach[ed] her fiduciary duty when she exercise[d] control of the company or [sought] a personal advantage in a way that [was] unfair, unjust, or inequitable to Ms. Cendana. Ms. Hatch . . . violated her duties to Ms. Cendana." Thus, it ordered "a board meeting as soon as practicable" and that Cendana was "entitled to retain her Board position and [could] vote her 40% shares." The trial court also ordered a winding down and dissolution of Caritas, including the appointment of a receiver to conduct the winding down and dissolution process.

*Appeal*

Judgment was entered, and this timely appeal ensued.

## DISCUSSION

Plaintiffs raise a host of arguments challenging the judgment. But we readily affirm as to all three plaintiffs (Hatch, Caritas, and the derivative claims of Unified) on grounds of unclean hands.

I. *Standards of review*

The standard of review is "the threshold issue" for every appeal. (*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611.) It "is the compass that guides the appellate court to its decision. It defines and limits the course the court follows in arriving at its destination." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.) Yet the applicable standard of review is nowhere mentioned in plaintiffs' appellate briefs.

We review the trial court's decision to apply unclean hands for abuse of discretion and its factual findings for substantial evidence.  (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109; but see *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 274–275 [noting that appellate courts have inconsistently applied either the abuse of discretion or substantial evidence standard of review]; *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447 (*Dickson*) [abuse of discretion]; *Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 (*Kendall-Jackson*) [substantial evidence].)  "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)

To the extent plaintiffs' arguments raise issues of law, our review is de novo.  (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 437 (*Padideh*).)

II.  *Relevant law*

A.  Principles of equity

"Equity aims to do right and accomplish justice.  [Citation.] "'Equity or chancery law has its origins in the necessity for exceptions to the application of rules of law in those cases where the law, by reason of its universality, would create injustice in the affairs of men." [Citation.]' [Citation.]  Equity therefore will assert itself in situations where right and justice would be defeated but for its intervening.  [Citation.]  The equitable powers of a court are not curbed by rigid rules of law, and thus wide play is reserved to the court's conscience in formulating its decrees. These powers are broad enough to address novel conditions and

11

meet the requirements of every case.  [Citation.]  In other words, equity recognizes that we live in a changing world and equitable remedies are flexible, capable of expanding to meet the increasing complexities of these changing times.  Inflexible rules are not permitted to curtail the power of equity to accomplish justice. [Citation.]" (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1133 (*Lickiss*); see also *ZF Micro Solutions, Inc. v. TAT Capital Partners, Ltd.* (2022) 82 Cal.App.5th 992, 1000 (*ZF Micro*) ["Equity arose to make exceptions when rules of law would work injustice in particular cases or to deal with some novel situation not covered by rules of law"].)

In exercising its equitable powers, courts must consider "the equities on both sides of a dispute." (*Lickiss*, *supra*, 208 Cal.App.4th at p. 1133; see also *ZF Micro*, *supra*, 82 Cal.App.5th at p. 1001 ["When [a court] exercises its equitable powers, the court weighs the competing equities on both sides of a dispute"].)  "This basic principle of equity jurisprudence means that in any given context in which the court is prevailed upon to exercise its equitable powers, it should weigh the competing equities bearing on the issue at hand and then grant or deny relief based on the overall balance of these equities.  [Citation.]" (*Lickiss*, *supra*, at pp. 1133–1134.)

"'A court sitting in equity, and having taken jurisdiction, has broad powers.  It may grant relief as varied and diversified as the means employed to produce the grievance complained of, and is not bound to the strict legal rights of the parties.'" (*Woodland Cooperative Rice Growers v. Smith* (1949) 91 Cal.App.2d 926, 930–931.)

B.  <u>Unclean hands</u>

12

The equitable defense of unclean hands "has been allowed as an affirmative defense in legal actions." (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 619 (*Unilogic*); see also *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728 (*Fibreboard*) [noting that the distinction under common law between actions at law and suits in equity has been abolished].) It "applies . . . where it would be inequitable to grant the plaintiff *any* relief." (*Dickson, supra*, 83 Cal.App.4th at p. 447; see also *Kendall-Jackson, supra*, 76 Cal.App.4th at p. 985 [doctrine "is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim"].) "'It is available to protect the court from having its powers used to bring about an inequitable result in the litigation before it. [Citations.]' [Citation.]" (*Padideh, supra*, 89 Cal.App.5th at p. 426.)

"Although the venerable unclean-hands defense has been described in many iterations, courts have developed and now consistently apply a 'three-pronged test to determine the effect to be given to the plaintiff's unclean-hands conduct. Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. [Citations.]' [Citation.]" (*Padideh, supra*, 89 Cal.App.5th at p. 426.)

In other words, the doctrine applies where a plaintiff engages in misconduct "in connection with the matter in controversy." (*Dickson, supra*, 83 Cal.App.4th at p. 446.) "The misconduct that brings the [un]clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct

13

or prior misconduct that only indirectly affects the problem before the court does not suffice." (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 979.) "'The issue is not that the plaintiff's hands are dirty, but rather ""that the manner of dirtying renders inequitable the assertion of such rights against the defendant."''" [Citation.] The misconduct 'must prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.'''" (*Ibid.*)

"The misconduct which brings the [un]clean hands doctrine into operation must . . . affect the equitable relations between the litigants." (*Fibreboard, supra,* 227 Cal.App.2d at p. 728.) All that means is that "'[t]he trial of the issue relating to clean hands cannot be distorted into a proceeding to try the general morals of the parties.' [Citation.]" (*Unilogic, supra,* 10 Cal.App.4th at p. 621.) If the parties' alleged "misconduct occurred in the same transaction that forms the subject of this litigation . . . that is enough to trigger application of the unclean hands doctrine." (*Ibid.*)

III. *The trial court did not err*

Applying these legal principles, we conclude that the trial court did not err in applying the doctrine of unclean hands to bar plaintiffs' claims against Cendana.

Regarding Hatch's individual claims, as set forth in the trial court's extremely thorough and detailed statement of decision, there was overwhelming evidence of her unclean hands. Her unclean hands were directly related to the claims at issue in this litigation. (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 979.) And, her unclean hands continued through trial. (See *Padideh, supra,* 89 Cal.App.5th at p. 425 [plaintiffs must come to court with clean hands "and keep them clean"].)

14

Urging us to conclude otherwise, plaintiffs contend that Hatch did not have unclean hands because she did not withdraw more than her proportionate share of the corporate profits; because her claim was based upon the theory that "Cendana withdrew more than her fair share of the corporate profits," the doctrine of unclean hands does not apply. But as the trial court aptly noted, there was no evidence to support this allegation. Hatch's purported evidence in this regard was unreliable and suspect, and her expert testimony was simply not credible. We cannot, and will not, reassess the credibility of witnesses or evidence. (*Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1015.)

Like Hatch, Caritas's claims and Unified's derivative claims are also barred by the doctrine of unclean hands. Hatch's misconduct can be attributed to the two corporations: She was an officer and director of both corporations and one of only two shareholders. While a corporation is considered a "person" within the meaning of the state and federal constitutions (9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 1, p. 775), it is not an "individual" with a state of mind. (*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167–168.) A corporation acts only through its employees or agents. (*AvalonBay Communities, Inc. v. County of Los Angeles* (2011) 197 Cal.App.4th 890, 903.) Thus, when an officer acts on behalf of a corporation, there is only a single actor—the corporation. (*Ibid*.) And an officer's misconduct may be imputed to the corporation. (See, e.g., *Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 456–457 [corporate president's criminal negligence may be imputed to the corporation]; *People v. Parker* (1965) 235 Cal.App.2d 86, 93 ["A

corporation, of course, can acquire knowledge only through its officers and agents"].)

Under the circumstances presented in this case, it is simply nonsensical for plaintiffs to argue on appeal that Caritas was a mere victim of Cendana's theft. In fact, this argument begs the question of why Caritas only sued Cendana—if Caritas was a mere victim of the malfeasance of its only two shareholders, why didn't it sue Hatch?

Plaintiffs argue that the doctrine of alter ego (and/or other theories of vicarious liability) cannot be applied defensively; in other words, Cendana cannot use the alter ego doctrine to escape liability to Caritas. This argument fails for at least two reasons. First, Cendana was not just a defendant in this action; she was also a cross-complainant against Hatch and Caritas, and she alleged vicarious liability against them. While her pleading does not specifically allege alter ego liability, we can infer from the trial court's statement of decision that it broadly construed Cendana's pleading (Code Civ. Proc., § 452; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59 [if a party fails to bring omissions or ambiguities in the statement of decision to the trial court's attention, then the appellate court will infer findings to support the judgment]) and found both Hatch and Cendana to be alter egos of both corporations.

Second, we disagree with plaintiffs' characterization of Cendana's defense. Cendana is not trying to use the alter ego doctrine to avoid her own liability; rather, she directs us to Hatch's misconduct, and Hatch's misconduct can be imputed to

Caritas for the reasons set forth above.[2] (See also *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1143 [wrongdoing of fiduciaries can be imputed to the corporation if all relevant decisionmakers of the corporation are involved in the fraud].)

The cases cited by plaintiffs on appeal do not compel a different result. *Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528 is readily distinguishable. In that case, "a duplicitous partner [sought] to obtain indemnification under a partnership liability policy for the damages caused to his *innocent* copartners by his misappropriation of a partnership opportunity." (*Id.* at p. 1531, italics added.) The Court of Appeal rejected his argument, reasoning that there was no partnership liability for the dishonest partner's misconduct; his wrongful acts against his innocent copartners occurred outside the scope of partnership business. (*Id.* at p. 1539)

Here, in contrast, *both* Hatch and Cendana acted fraudulently and wrongfully. Hatch was far from an innocent coshareholder or officer or director. Applying well-settled equitable principles, under these circumstances, plaintiffs cannot claim that Caritas (or Unified) was an innocent victim of Cendana's misconduct.

In the other cases cited by plaintiffs, the courts rightly recognized that a person who abused the corporate form could not invoke that breach to his or her advantage against an innocent

---

[2] In their reply brief, plaintiffs argue for the first time that liability cannot be imputed to the corporate entities pursuant to the adverse interest exception. "For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered." (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.)

17

third party. (See, e.g., *LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1081; *United States v. Real Property Located at 475 Martin Lane* (C.D.Cal. 2012) 2012 WL 12882013, at p. *4.) At the risk of sounding redundant, that is not the situation in this case. Here, it is not that Cendana is attempting to invoke her malfeasance to avoid liability to an innocent plaintiff; rather, the trial court found that *both* Cendana and Hatch disregarded all corporate formalities and treated the two corporations as their own personal piggy banks. In light of the trial court's finding, it would "work an absurdity" and "promote an inequitable result" to allow the corporations to pretend they stand as entities separate and apart from their shareholders. (*LSREF2 Clover Property*, *supra*, at p. 1082.) Exercising its broad inherent equitable powers, the trial court properly applied the doctrine of unclean hands to the corporations.

In reaching this conclusion, we find *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 (*Peregrine*) instructive. In *Peregrine*, a bankruptcy trustee that had succeeded to the interests of a corporation used to perpetrate a Ponzi scheme sued a law firm for malpractice and for aiding and abetting the Ponzi scheme. The *Peregrine* court held that the doctrine of unclean hands barred both the corporation and its successor in interest (the bankruptcy trustee) from pursuing claims against the law firm. (*Id.* at pp. 679–680.) The court reasoned that the individual who owned and controlled the corporation was the primary architect of the Ponzi scheme and applied the doctrine of unclean hands to impute the owner's fraud to the corporation. (*Ibid*.)

18

While we are not considering whether corporate misconduct can be imputed to a bankruptcy trustee, the reasoning of *Peregrine* applies squarely here. Caritas and Unified were sham entities with no corporate identities apart from their two sole (and crooked) shareholders (Hatch and Cendana). (*Peregrine*, *supra*, 133 Cal.App.4th at p. 678.) They were owned and controlled by the two shareholders; thus, Hatch and Cendana's knowledge and fraudulent conduct can be imputed to the two entities. (*Id*. at pp. 679–680.) Any alleged injury that the corporate entities suffered was "'as illusory as . . . their corporate identit[ies].'" (*Id*. at p. 678.)

IV. *Involuntary dissolution of Caritas and United; election and seat on Caritas's board*

Plaintiffs contend that the trial court "erred in applying [the doctrine of] unclean hands in an inconsistent and unfair manner." According to plaintiffs, if both Hatch and Cendana acted with unclean hands, then (1) plaintiffs should have prevailed (at a minimum) on their request for an accounting, and (2) Cendana should not have prevailed on her request to compel an election and involuntarily dissolve Caritas and Unified.

The trial court did not err. First, plaintiffs were not entitled to an accounting as they did not meet their burden of proof on this claim. (Evid. Code, § 500 [a party has the burden of proof as to facts essential to his or her claim for relief].) In any event, the dissolution of each corporation will undoubtedly require an accounting. (See, e.g., Corp. Code, § 1806, subds. (c) & (d); *Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998, 1005 ["It is of course an indispensable part of the receiver's duties to file an accounting"].)

Second, "[t]he dissolution of a corporation is an equitable action in which jurisdiction is granted by statute, and a court of equity is to take jurisdiction of the cause, once a requisite showing is made, and then exercise its discretion in granting or refusing equitable relief." (7B Am.Jur. Pl. & Pr. Forms Corporations § 477; accord, *Oliker v. Gershunoff* (1987) 195 Cal.App.3d 1288, 1306 ["[a] judicial dissolution and supervised accounting of a partnership is an equitable action"].) As set forth above, the doctrine of unclean hands is also an equitable doctrine, and the trial court is vested with broad equitable powers to "do right and accomplish justice" (*Lickiss, supra*, 208 Cal.App.4th at p. 1133), particularly in "novel situation[s]" (*ZF Micro, supra*, 82 Cal.App.5th at p. 1000).

After presiding over this matter for years, and becoming extraordinarily familiar with the unscrupulous players and their gross misconduct, the trial court properly invoked its equitable powers to "do right." (*Lickiss, supra*, 208 Cal.App.4th at p. 1133.) Consistent with plaintiffs' prayer in their operative pleading for "relief [that is] just and proper," the trial court came to a well-reasoned decision as to how to resolve the competing claims between Hatch and Cendana: In accordance with Corporations Code sections 600 and 1800, it ordered a winding down and dissolution of both corporate entities. Nothing in the trial court's decision suggests that it used principles of unclean hands and/or equity to avoid a statutory mandate. (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1491; *Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 35.)

Finally, plaintiffs argue that the trial court erred in "ordering Caritas and Unified to conduct elections for their boards of directors" and "also ordering that Cendana was

20

[entitled] to a seat on Caritas's and Unified's board of directors." Plaintiffs have not met their burden on appeal. They do not explain, with a cogent, reasoned argument, how the trial court erred. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 ["the obligation to support points with argument and citations to authority . . . requires more than simply stating a bare assertion that the judgment 'is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness'"].) And they offer no legal authority in support of their contention that the trial court ruled inconsistently by finding alter ego liability on the one hand, yet dissolving the corporations on the other. (See, e.g., *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [when a court disregards the corporate entity, it does not dissolve the corporation; that is a separate act].) In light of the court's broad equitable powers and its factual findings, we see no grounds to reverse.

V. *Moot issues*

All remaining issues are moot.

## DISPOSITION

The judgment is affirmed.  Cendana is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
RICHARDSON